IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMANDA ANTHONY, | ) | CASE NO.  1:13-cv-1237 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B.  BURKE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **AMENDED MEMORANDUM** |
| Defendant. | ) | **OPINION & ORDER** |

Plaintiff Amanda Anthony ("Plaintiff" or "Anthony") seeks judicial review of the final decision of Defendant Acting Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned Magistrate Judge pursuant to the consent of the parties.  Doc. 16.

As discussed below, the Administrative Law Judge's ("ALJ") credibility determination was improper under the regulations of the Social Security Administration ("SSA").  Specifically, the ALJ, contrary to the express provisions of 20 C.F.R. § 404.1529(c)(2), discounted Anthony's testimony as to the severity of her symptoms based solely on his determination that the objective evidence of record did not support the severity she alleged.  Accordingly, the Court **REVERSES** and **REMANDS** the Commissioner's decision for further proceedings consistent with this Memorandum Opinion and Order.

## I. Procedural History

Anthony protectively filed[1] an application for SSI on January 12, 2010, and filed an application for DIB on February 2, 2010,[2] alleging disability since January 4, 2008. Tr. 135-136, 158-169. Anthony alleged disability based on knee and intellectual problems. Tr. 162. After denials by the state agency initially (Tr. 84-85, 88-93) and upon reconsideration (Tr. 86-87, 96-101), she requested a hearing. Tr. 106-07. A hearing was held before Administrative Law Judge ("ALJ") Frederick Andreas on November 23, 2011. Tr. 34-83.

In his December 20, 2011 decision, (Tr. 9-23), the ALJ found that Anthony's residual functional capacity ("RFC") did not prevent her from performing work existing in significant numbers in the national economy, i.e., she was not disabled. Tr. 21. Anthony requested review of the ALJ's decision by the Appeals council. Tr. 7. On April 24, 2013, the Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-6.

## II. Evidence[3]

### A. Anthony's Testimony

At the administrative hearing, Anthony was represented by counsel and testified that she could not work because of her knee problems and limited education. Tr. 45. She testified that she is married and has two children. Tr. 40, 42. She also testified that she had a temporary

---

[1] Protective filing date: The date a claimant first contacts the social security agency about filing for benefits. It may be used to establish an earlier application date. http://www.socialsecurity.gov/agency/glossary/ (last visited 8/19/2014).

[2] The ALJ states (Tr. 8-29) that claimant applied for DIB on February 3, 2010 (Tr. 8; however, claimant's application reflects a February 2, 2010 filing date. Tr. 135-41.

[3] As this case is being remanded based on the ALJ's failure to follow the regulations with regard to his credibility analysis, only evidence relative to that argument will be summarized herein.

driver's license and never obtained a regular driver's license.  Tr. 40.  Anthony testified that she attended school up to the eighth grade but did not complete the eighth grade because she was missing school due to ovarian problems.  Tr. 41-42.  Anthony stated that she also tried home schooling in the eighth grade but did not finish.  Tr. 63.  She testified that she attended special education classes for math, reading, writing, and spelling while in school.  Tr. 55.  She stated that she was in regular classes for science and social studies.  Id.  She testified that she can multiply but cannot divide or make change for a dollar and would need paper to add double digits.  Tr. 42, 56.

Anthony testified that she was most recently employed as a finisher from 2006 through 2008.  Tr. 43-44.  She testified that she left the job due to her knee problems.  Tr. 44-45.  She testified that she also previously worked for Custom Carts, a fast-paced job that required her to fill orders.  Tr. 44.  Anthony further testified that around 1999 she worked as an assembler[4] at a box company where she met her husband who trained her for that job.  Tr. 59.  She stated that she left the job with the box company because, "I was…living with my mom at the time, and I just felt that maybe I didn't need to work.  So I quit."  Id.  She further testified that she has had problems learning at work which would cause her employers to move her from one position to another because she "couldn't quite get" what they had her doing.  Tr. 56.

Plaintiff testified that she was suffering from depression due to problems with her knee and that she had depression problems in the past.  Tr. 61.  She testified that she recently began getting treatment for her depression at Signature Health.  Id.

---

[4] Although Anthony did not specify what her title was at the box company, the VE testified that the job was best classified as an assembler.  Tr. 73.

3

### B. Anthony's Husband's Testimony

Anthony's husband also testified at the hearing. Tr. 65-70. He testified that he previously trained Anthony for her job with the box company and noticed problems with her ability to understand. Tr. 65. He stated that the training lasted for a week and by the end of the week she had a "fairly decent grasp" on the job. Tr. 66. Anthony's husband testified that Anthony has problems with reading and writing and could not read the word "the" recently. Tr. 70.

### C. Vocational Expert Testimony

Vocational Expert Dr. Nancy Borgeson ("VE") testified at the hearing. Tr. 71-81. The VE testified that Anthony has past relevant work as a finisher of plastic products (light,[5] unskilled), a finisher of fiberglass (medium, unskilled), and an assembler (light, unskilled). Tr. 21, 73, 81. The ALJ then asked the VE to determine whether a hypothetical individual of Anthony's same age, education, and vocational background and with the following characteristics could perform Anthony's past relevant work: is capable of performing less than light work; could lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently; able to sit, stand, or walk for six out of eight hours with normal breaks; could frequently use ladders, ropes, and scaffolds; could frequently kneel, crouch, or crawl; and complete simple, repetitive tasks that do not require more than occasional interactions with others. Tr. 74. The VE testified that such a person could perform all of Anthony's past relevant jobs. Tr. 74.

The ALJ then asked the VE to consider a second hypothetical individual who could perform sedentary work; could not use ladders, ropes, or scaffolds; could frequently kneel, crouch, or crawl; and could complete simple, repetitive tasks that do not require more than

---

[5] The VE initially testified that this job was a medium exertional level (Tr. 73) but later clarified that Anthony performed the job at a light exertional level (Tr. 81).

4

occasional interaction with others. Tr. 75. The VE concluded that such person could not perform any of Anthony's past relevant work; however, the VE testified that such a hypothetical individual could perform work as a final assembler (150,000 jobs nationally, 10,000 Ohio jobs, and 2,000 jobs in Northeast Ohio); a table worker (473,000 jobs nationally, 27,000 Ohio jobs, and 5,000 jobs in Northeast Ohio) and an inspector (41,000 jobs nationally, 2,200 Ohio jobs, and 450 jobs in Northeast Ohio). Tr. 75-76.

Anthony's attorney then asked the VE whether a hypothetical person who was off task an average of fifteen percent of the day on a daily basis would be able to find competitive work. Tr. 77. The VE responded that such a person would not be able to sustain the jobs previously mentioned. Tr. 77.

### III. Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2). In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

5

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[6] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity and vocational factors to perform work available in the national economy. *Id.*

### IV. The ALJ's Decision

In his December, 2011 decision, the ALJ found that:

1. Claimant meets the insured status requirements of the Social Security Act through March 31, 2013. Tr. 13.

2. Claimant has not engaged in substantial gainful activity since January 4, 2008, the

---

[6] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq. The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. §404.1520 corresponds to 20 C.F.R. § 416.920).

6

      alleged onset date. Tr. 13

3. Claimant has the following severe impairments: degenerative joint disease of the knees, degenerative joint disease and disc disease of the spine, depression, and borderline intellectual functioning. Tr. 13.

4. Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1.[7] Tr. 13-14.

5. Claimant has the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she could not use ladders, ropes or scaffolds, could only frequently kneel, crouch, and crawl, and can perform simple, repetitive tasks that do not [sic] more than occasional interaction with others. Tr. 16.

6. Claimant is unable to perform any past relevant work (20 CFR 404.1565 and 419.965). Tr. 21.

7. Claimant was born in 1980 and was 27 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963). Tr. 21.

8. Claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964). Tr. 21.

9. Transferability of job skills is not an issue in this case because Claimant's past relevant work is unskilled. Tr. 21.

10. Considering Claimant's age, education, work experience, and RFC, there are jobs that exist in significant number in the national economy that Plaintiff can perform. Tr. 21.

11. Claimant has not been under a disability, as defined in the Social Security Act, from January 4, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). Tr. 22.

---

[7] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525.

## V. Arguments of the Parties

Anthony contends that the ALJ erred in the following three ways. First, Anthony argues that the ALJ's determination that her intellectual disability does not meet Listing 12.05C[8] was not supported by substantial evidence. Doc. 17, pp. 14-18. Second, Anthony contends that the ALJ did not properly evaluate her credibility. Id. at pp.18-21. Finally, Anthony argues that the RFC did not adequately account for her limitations in concentration, persistence, and pace. Id. at pp. 21-24.

The Commissioner counters that substantial evidence supports the ALJ's determination that Anthony does not meet listing 12.05C. Doc. 18, pp. 12-16. Next, the Commissioner contends that the ALJ sufficiently articulated his credibility assessment. Id. at pp. 16-18. Finally, the Commissioner argues that the ALJ correctly accounted for Plaintiff's moderate limitations in concentration, persistence, and pace in the RFC. Id. at pp. 18-19.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 20*03). "Substantial evidence is more than a scintilla of evidence but

---

[8] Listing 12.05 states:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> ....
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

20 C.F.R. Pt. 404, Subpt. P, App'x 1 §12.05.

8

less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) 96–7p, 1996 WL 374186, *2. Moreover, an ALJ's failure to follow an applicable regulation provides grounds for reversal and remand. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) ("It is an elemental principle of administrative law that agencies are bound to follow their own regulations."); *Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 822 (N.D. Ohio 2009) ("Because the ALJ failed to follow procedural regulations designed to protect Winning, this Court reverses the ALJ's decision.")

### A. The ALJ did not properly assess Anthony's credibility

Anthony asserts that the ALJ's credibility analysis violated Sixth Circuit precedent and federal regulations because it was based solely on the finding that objective evidence did not

support her allegations as to the intensity, persistence, and limiting effects of her symptoms. Doc. 17, pp. 18-21.   The SSA regulation pertinent to the credibility analysis is 20 C.F.R. § 404.1529, which provides:

> (c) *Evaluating the intensity and persistence of your symptoms, such as pain, and determining the extent to which your symptoms limit your capacity for work*—(1) *General.* When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work....
>
> (2) *Consideration of objective medical evidence.* Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption. Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work. We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, *we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.*
>
> (3) *Consideration of other evidence.* Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms.... We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining or consulting physician or psychologist, and observations by our employees and other persons.... Factors relevant to your symptoms, such as pain, which we will consider include:
>
>> (i) Your daily activities;
>>
>> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>>
>> (iii) Precipitating and aggravating factors;
>>
>> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>>
>> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

>   (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
>   (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.
>
>   (4) *How we determine the extent to which symptoms, such as pain, affect your capacity to perform basic work activities.* In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your medical history, the medical signs and laboratory findings, and statements by your treating or examining physician or psychologist or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

(Emphasis added.)

The Sixth Circuit has enunciated this standard in a more succinct form. In *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986), the Sixth Circuit established the following analysis for evaluating a claimant's assertions of disabling pain:

>   First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Id.* at 853 (emphasis supplied); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). As the Sixth Circuit has explicitly noted, however, this test "does not require ... 'objective evidence of the pain itself.' " *Id.* (citations omitted).

The SSA regulation and *Duncan* test provide a two-prong test: first, there must be

11

objective medical evidence establishing the existence of an underlying medical condition.[9] Second, as stated by *Duncan*, the severity of the symptoms may be confirmed in either one of two ways: (1) by objective medical evidence; or (2) by determining whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain. The second prong alternatives stated by *Duncan* are consistent with 20 C.F.R. § 404.1529(c)(2), which, as quoted in full above, states that a claimant's statements about the intensity, persistence, and effects of her pain or other symptoms will not be rejected "solely because the available objective medical evidence does not substantiate your statements." Indeed, the SSA, in subsection (3) of the regulation, also quoted in full above, provides a checklist of factors that are to be used in evaluating symptoms 20 C.F.R. § 404.1529(c)(3); *see Felisky,* 35 F.3d at 1039–40. The regulations do not mandate a discussion of all of the relevant credibility factors; an ALJ may satisfy his obligation by considering most, if not all, of the factors. *See Bowman v. Chater,* 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997 ) (per curiam). In addition to these factors, an ALJ must review the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40.

On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Id.* (citation omitted). Nevertheless, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling (SSR) 96–7p, 1996 WL

---

[9] Here, the ALJ found that Anthony had the following severe impairments: degenerative joint disease of the knees, degenerative joint and disc disease of the spine, depression, and borderline intellectual functioning. Tr. 13.

374186, *2. In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [Plaintiff's testimony] are reasonable and supported by substantial evidence in the record." *Jones v. Comm'r Soc. Sec.,* 336 F.3d 469, 476.

Here, the ALJ found that Anthony's medically determinable impairments could reasonably be expected to cause her alleged symptoms. Tr. 17. However, the ALJ determined that Anthony's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the RFC assessed by the ALJ. Tr. 17. After summarizing the various medical records and Anthony's daily activities, the ALJ provided the following explanation for discrediting Anthony's testimony:

> Overall, the *objective evidence* of record does not establish that the claimant has symptoms to the severity she alleged. The evidence of record does not contain much *objective support* for her allegations. While the claimant did undergo an arthroscopic procedure in 2008, the majority of her medical records consist of emergency room visits for allegations of pain. The *diagnostic tests in the record were either negative or revealed only mild degeneration.* Even giving the most credit possible to the allegations of the claimant, the *objective evidence* does not support a more limiting residual functional capacity than I assigned above. Despite the claimant's allegations that she needs to elevate her legs frequently, the objective evidence does not support this limitation.

Tr. 20-21 (emphasis added).

This explanation by the ALJ shows that he discounted Anthony's credibility based solely on his determination that the objective medical evidence was insufficient to support her claims. The Commissioner fails to acknowledge that the ALJ discredited Anthony based solely on his assessment of the objective medical evidence. Rather, the Commissioner contends that the ALJ applied the correct analysis under the regulations when looking at the decision as a whole. Doc. 18, pp. 16-18. More specifically, the Commissioner argues that the ALJ met the standard by recounting Anthony's subjective complaints, considering Anthony's daily activities, assigning

weight to medical opinions which did not support the severity of Anthony's complaints, and pointing out that the objective testing was largely negative or showed only mild conditions.  Id. at. 18.

**Subjective complaints & daily activities.**  With regard to Anthony's subjective complaints and daily activities, the ALJ merely noted what Anthony reported as to her complaints and daily activities.  The ALJ failed to explain how these activities either support or detract from her credibility.[10]  Therefore, contrary to the Commissioner's argument, the ALJ's decision does not demonstrate that the ALJ applied the appropriate credibility analysis.

**Medical opinions.**  The Commissioner also argues that the ALJ's assignment of weight to the opinions of Drs. Brant and Dr. Holbrook show that the ALJ implicitly discredited Anthony's complaints.  Doc. 18, p. 18.  The Commissioner points out that Dr. Brant opined that Anthony could stand for two hours per day and had no sitting restrictions.  Id.  The Commissioner also points out that Dr. Holbrook opined that Anthony could lift up to twenty pounds occasionally; ten pounds frequently; and could sit, stand, or walk for up to six hours in an eight-hour day.  Id.  There are several problems with the Commissioner's arguments.  First, the ALJ only gave "some weight" to Dr. Holbrook and stated specifically that he gave "more credit to the claimant's subjective allegations of pain in her knees and back, limiting her to sedentary work."  Tr. 19.  Dr. Brant provided two opinions (one in 2010 and one in 2011).  Tr. 18.  The ALJ stated that these two opinions were inconsistent with each other and he did not give full

---

[10] The Commissioner also points out that "treatment notes show that on her first day home after arthroscopy she was washing dishes, and less than two months after her arthroscopy she was 'much better,' walking up to five hours per day, and was 'very busy' caring for her three children."  Doc. 18, p. 18 (citing to Tr. 256, 259).  However, the ALJ did not discuss these records.  "[A]rguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's *'post hoc* rationale' that is under the Court's consideration."  *Romig v. Astrue*, 2013 WL 1124669 at *5 (citing *Bable v. Astrue,* 2007 U.S. Dist. LEXIS 83635, 27–28 (N.D.Ohio, Oct. 31, 2007; *NLRB v. Ky. River Cmty. Care, Inc.,* 532 U.S. 706, 715, n. 1, 121 S.Ct. 1861, 149 L.Ed.2d 939, (2001)); *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996) ("We cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.")).

weight to the opinions. Id. Accordingly, it is unclear how the weight given to these sources would support or detract from Anthony's credibility. In fact, with regard to Dr. Holbrook's opinion, the ALJ specifically stated that he gave more credit to Anthony's complaints than to Dr. Holbrook's opinion.

Based on all of the above, the Commissioner's argument that the ALJ's opinion as a whole demonstrates that the ALJ applied the correct analysis is without merit.[11] While the Commissioner may be correct that substantial evidence exists in the record to support the ALJ's credibility finding, both the Sixth Circuit and this Court have reversed and remanded where an ALJ failed to comply with the applicable procedural requirements when conducting the analysis. *Felisky*, 35 F.3d at 1039; *Romig v. Astrue*, 1:12-CV-001552, 2013 WL 1124669 at *6 (N.D. Ohio Mar. 18, 2013); *Caldwell v. Astrue*, 4:12 CV 2172, 2013 WL 3245336 at *21 (N.D. Ohio June 26, 2013).

In *Felisky*, the Sixth Circuit found that an ALJ's credibility analysis required reversal because the ALJ "explicitly [found] only the content of the medical record insufficient to support Felisky's claims…[and]…the ALJ did not apply the full test set out in 20 C.F.R. §404.1529(c) for evaluating subjective complaints of pain." *Felisky,* 35 F.3d at 1039-104

In *Romig*, this Court reversed and remanded due to an ALJ's faulty credibility analysis under facts strikingly similar to the facts of this case. *Romig*, 2013 WL 1124669 at *6. In *Romig*, as in this case, the ALJ discussed claimant's daily activities without explaining in the opinion how these activities supported or detracted from claimant's credibility. The only credibility discussion in the decision was as follows:

---

[11] The ALJ also found that Anthony's husband's testimony was credible because he made statements against interest. The decision does not identify what the "statements against interest" were but it appears that the statements to which the ALJ referred consisted of hearing testimony that, although Anthony had problems learning the assembler job, she did have a fairly decent grasp after one week. Tr. 66. The ALJ stated that he gave weight to Anthony's husband's testimony, which included the statement that she would have difficulty returning to work due to her knee problems and difficulty reading. Tr. 20.

> The medical evidence discussed above shows that the claimant's allegations of disabling pain, lack of mobility, and mental impairments, which are found in the claimant's disability reports and hearing testimony, are *inconsistent with objective findings* and subjective findings on examinations prior to December 31, 2008. The claimant's symptoms *exceed the objective findings* contained in the medical records prior to December 31, 2008. The claimant's testimony is not well supported by the medical evidence of record prior to December 31, 2008. Accordingly, the undersigned finds that the claimant's allegations and subjective complaints are not fully credible.

*Id.* at *5. This Court held that reversal was required because the ALJ's credibility analysis did not discuss any of the seven factors set forth in SSR 96–7p. *Id.* at *6.

Finally, in *Caldwell*, this Court also reversed for an ALJ's faulty credibility analysis, stating as follows: "Notably absent [from the ALJ's decision] is any analysis that considers Plaintiff's complaints of chronic, severe and intense pain and whether Plaintiff's testimony was somehow inconsistent with the medical evidence in the record or the record as a whole." *Caldwell v. Astrue*, 4:12 CV 2172, 2013 WL 3245336 at *21 (N.D. Ohio June 26, 2013)

Accordingly, although this Court generally must give deference to an ALJ's credibility determination and although substantial evidence may exist in the record to support the ALJ's determination, this case must be reversed and remanded due to the failure of the ALJ to comply with the applicable regulations when conducting his credibility analysis.

**B.     Additional Arguments**

Anthony also argues that reversal is necessary because the ALJ failed to find that she met Listing 12.05[12] and because the ALJ failed to account in the RFC for her moderate limitations in concentration, persistence, and pace. Doc. 17, pp. 15, 21-22. This opinion does not address Anthony's additional arguments because, on remand, the ALJ's evaluation of Anthony's

---

[12] Notably, one of the findings of the ALJ with regard to Listing 12.05 is inconsistent with the ALJ's RFC restricting Anthony to sedentary work. The ALJ stated that one of the reasons that Anthony does not meet Listing 12.05 is because she does not have a physical or other mental impairment imposing an additional and significant work-related limitation of function. Tr. 16. Despite this inconsistency, it may still be possible that the ALJ's decision that Anthony does not meet Listing 12.05 is supported by substantial evidence and the Court makes no determination on this issue at this time.

credibility could impact his findings with respect to both of these issues. *See Trent v. Astrue*, Case No.1:09CV2680, 2011 U.S. Dist. LEXIS 23331, at *19 (declining to address the plaintiff's remaining assertion of error because remand was already required and, on remand, the ALJ's application of the treating physician rule might impact his findings under the sequential disability evaluation).

### VII.  Conclusion

For the reasons set forth herein, the Court REVERSES AND REMANDS the Commissioner's decision for further proceedings consistent with this Opinion and Order.[13]

Dated: August 27, 2014

Kathleen B.  Burke
United States Magistrate Judge

---

[13] This opinion should not be construed as requiring a determination on remand that Anthony is disabled.